UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MITSUIYA INDUSTRIES CO., LTD.,**<br><br>Plaintiff,<br><br>vs.<br><br>**FORMED FIBER TECHNOLOGIES, INC., et al.,**<br><br>Defendants. | **2:20-CV-10941-TGB**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DENYING MOTION TO STRIKE** |

Plaintiff Mitsuiya Industries Co., LTD. ("Mitsuiya") brought this complaint against Formed Fiber Technologies, Inc. ("FFT Inc.") and a group of related corporate defendants, alleging breach of contract, unjust enrichment, and trade secret misappropriation under state and federal law. The current operative pleading is a first amended complaint ("FAC"). ECF No. 23. Defendants filed a motion to dismiss which specifically seeks dismissal of one defendant and four counts (some in part, some entirely) and includes a motion to strike parts of the FAC. ECF No. 25. For the following reasons, Defendants' motion will be **GRANTED in part** and **DENIED in part**. The motion to dismiss Count

1

I of the FAC, and seeking to dismiss Defendant FFT Inc., will be **GRANTED**. The motion to dismiss parts of Counts II and III and to entirely dismiss Counts IV and V, as well as the motion to strike, will be **DENIED**.

## I.    BACKGROUND

Plaintiff Mitsuiya is a manufacturer of automobile parts for Toyota Motor Corporation and its affiliates. It also regularly licenses its technology to other manufacturers, who can then manufacture and sell parts to Toyota. Defendant Formed Fiber Technologies, Inc. ("FFT Inc.") was one such manufacturer, incorporated in Delaware, that entered into a technology licensing agreement ("TLA") with Mitsuiya in 2004. In exchange for technology specs for manufacturing fender liners, trunk trim, and other interior trim parts, as well as technical support, FFT Inc. agreed to pay Mitsuiya a percentage of any sales of these products as royalties. First Am. Compl., ECF No. 23, PageID.308-09.

Mitsuiya and FFT Inc. did business under this agreement without incident for almost ten years. In 2013, Mitsuiya alleges that FFT Inc. went through a reorganization where its assets were sold to a new company and its management changed. ¶¶ 59-83, ECF No. 23, PageID.331-38. It also alleges that around this time FFT Inc. fell behind on its royalty payments. *Id.* at PageID.347. On December 31, 2013, a certificate of dissolution for FFT Inc. was filed in Delaware. *Id.* at ¶ 73,

PageID.335. FFT Inc.'s successor in interest is Defendant FFT Technologies. Tr. 10/15/20 at 8:9-12, ECF No. 36, PageID.803.

According to Mitsuiya, it received no royalties for a period of about eighteen months. ECF No. 23, PageID.352. In June 2014 executives from Mitsuiya and FFT Technologies met to negotiate a schedule for repayment and an accommodation regarding future royalty rates. *Id.* After this meeting, Mitsuiya entered into two agreements, one entitled "Agreed Matters" and a second called "Revised Agreed Matters" ("AM" and "RAM," respectively). ECF No. 23, PageID.470-74. In these contracts, Mitsuiya and FFT Technologies[1] agreed on a payment schedule for missed royalties, agreed to a temporary reduction in the royalty rate, and agreed that future royalties "will be discussed." *Id.*

After the AM and RAM were signed, Mitsuiya alleges that FFT Technologies made only some of the required payments. ¶¶ 231-33, ECF No. 23, PageID.379. No agreement on a new royalty rate was ever reached. *Id.* at ¶ 166, PageID.363. Mitsuiya also alleges it made multiple unsuccessful attempts to follow up on missed payments and to engage FFT Technologies in discussions concerning other terms of the RAM. *Id.* at PageID.359-64. Finally, in April 2017, the TLA was terminated. *Id.* at

---

[1] The agreements are signed on behalf of "Formed Fiber Technologies, LLC," which Defendants indicate is a prior name for FFT Technologies. *See* Chart, ECF No. 35, PageID.793. The parties do not disagree that Defendant FFT Technologies is bound by the agreements. Tr. 10/15/20, ECF No. 36, PageID.803, 822.

PageID.309. Mitsuiya alleges that despite the termination of the licensing agreement, even through to the present day, some or all of the Defendants continue to use Mitsuiya's proprietary technology without authorization or the payment of any royalties. *Id.* at PageID.339.

Mitsuiya filed its complaint on April 16, 2020. Defendants filed this Motion to Dismiss in lieu of an answer on June 18. They seek to (1) dismiss FFT Inc. as a defendant, (2) dismiss Count I of the FAC, which is only against FFT Inc., (3) dismiss in part Counts II and III, making breach of contract allegations against FFT Technologies (Count II) and FFT Holdings (Count III) , (4) dismiss Count IV, alleging liability for FFT Auburn, FFT Sidney, and Conform as alter egos for FFT Inc., FFT Technologies, and/or FFT Holdings, (5) dismiss Count V, alleging unjust enrichment against any defendants not having contractual liability, and (6) strike various sections of the FAC as "redundant, immaterial, or scandalous." The motion was fully briefed and the Court held a hearing on October 15, 2020.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the

light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

### III.   ANALYSIS

#### A.   Motion to Dismiss Count I and to dismiss FFT Inc. as a defendant

Defendants state that Plaintiff fails to make out a claim against FFT Inc. because it was dissolved in 2013. ECF No. 25, PageID.499; Tr.

10/15/20 at 11:6-10, ECF No. 36, PageID.806. The capacity of an organization to be sued is determined by the law of the state under which it was organized. Fed. R. Civ. P. 17(b)(2). FFT Inc. was incorporated under the law of Delaware in 2003. ¶ 2, ECF No. 23, PageID.312. Under Delaware law, corporations may be sued "for the term of 3 years from . . . expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct." DEL. CODE ANN. tit. 8, § 278 (2010).

Here, FFT Inc. appears to have been dissolved at the end of 2013. ECF No. 25, PageID.499. Without any extension from the Court of Chancery, it could only be sued until the end of 2016. This lawsuit was brought in 2020. Consequently, Plaintiff cannot bring a claim against FFT Inc.

Plaintiff concedes that FFT Inc. filed dissolution paperwork in Delaware but argues that this was a "paper" dissolution and should be considered invalid for at least three reasons. ECF No. 31, PageID.580-83. First, it says Defendants did not publish notice of dissolution or provide Mitsuiya with notice. But notice is not required under Delaware law, which says a corporation "*may* give notice" after a corporation has been dissolved. 8 DEL. CODE ANN. tit. 8, § 280(a)(1) (2010) (emphasis added). Mitsuiya does not point to any authority to the contrary. ECF No. 31, PageID.583. Second, Plaintiff points to a financing statement filed against FFT Inc. by a third-party creditor in 2019 as evidence that FFT

6

Inc. still exists. Ex. A, Mot. to Dismiss, ECF No. 25, PageID.523-27. Even viewing the evidence in the light most favorable to Plaintiff, without some corroborating evidence of continued business activities the Court cannot reasonably conclude the financing statement shows FFT Inc. still existed in 2019. There is no statutory or caselaw support for the position that a financing statement filed by *another* party can revive a dissolved corporation. Third, Plaintiff claims the AM and RAM signed in 2014 "affirmatively represented to Mitsuiya that FFT Inc. remained in existence." ECF No. 31, PageID.581. But the signatory named in the text of the documents is FFT LLC, not FFT Inc. ECF No. 23, PageID.470-74. Defendants state on the record that FFT LLC is a successor in interest to FFT Inc, not the same entity. ECF No. 35, PageID.793.

So, FFT Inc. no longer exists. But Mitsuiya argues in the alternative that Delaware law gives it the right to petition for the creation of a trust to collect on FFT Inc.'s assets up until ten years after its dissolution, or until 2024. DEL. CODE ANN. tit. 8, § 279 (2010). While this is true, the life of a corporation can only be extended in a manner that the "Court of Chancery shall in its discretion direct." *Id.* at § 278. Plaintiff has not asked the Delaware Court of Chancery to establish such a trust, nor has it explicitly asked this Court for one, instead suggesting this Court could authorize one because the parties agreed in the TLA that "any and all litigation" should be brought in the Eastern District of Michigan. Tr. 10/15/20, ECF No. 36, PageID.822-23. The Court disagrees.

7

The Delaware statutes are clear in that they vest the *Court of Chancery* with the power to create a trust. DEL. CODE ANN. tit. 8, §§ 278, 279 (2010). This Court has found no examples of courts outside the Delaware Court of Chancery's jurisdiction creating trusts under this statute, and a decision between the parties to make the Eastern District of Michigan the venue for litigation does not grant this Court the ability to revive a corporate entity under the laws of another state.

The Court finds that Plaintiff has failed to state a claim against FFT Inc. Defendant's motion is therefore granted to dismiss FFT Inc. as a defendant in the FAC. The motion is also granted to dismiss Count I of the FAC in its entirety, because it alleges breach of contract against FFT Inc. only.

### B.   Counts II and III—Breach of contract against FFT Technologies and FFT Holdings

Plaintiff makes four breach of contract allegations, and Defendants want to dismiss two: (1) failure to *negotiate* a new royalty rate in good faith and failure to *reach agreement* on a new royalty rate, and (2) failure to provide Mitsuiya access to corporate books for an audit in April 2019.[2] ECF No. 25, PageID.504-05. Counts II and III of the FAC are substantially similar and make the same claims against both FFT

---

[2] Defendants do not seek to dismiss the breach of contract claims that allege "failing to timely make arrears payments" and "continuing to use Mitsuiya's Technology after May 1, 2017 to the present." ECF No. 25, PageID.504-05; Tr. 11/1/20 at 13:16-19, ECF No. 36, PageID.808.

Technologies (Count II) and FFT Holdings (Count III). *See* ECF No. 23, PageID.385-95 (Count II), PageID.395-403 (Count III). Defendants do not argue that there is any difference in liability between FFT Technologies and FFT Holdings on these breach of contract claims. *See* Tr. 10/15/20 at 13:16-22, ECF No.36, PageID.808. At the Court's request, Defendants have filed a chart defining the relationships between the various corporate entities which states that FFT Holdings is the 100% owner of FFT Technologies. ECF No. 35, PageID.793. FFT Technologies is the entity that executed the AM and the RAM. ECF No. 23, PageID.470-74. Therefore, without making any specific findings about the relationship between the two entities other than what the parties have already conceded, the Court will evaluate the claims regarding Counts II and III together and apply the same conclusion to the motion to dismiss for both counts.

### i.  Choice of law

There is a threshold question that must be addressed regarding choice of law. A federal court applies the choice-of-law principles of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). Michigan follows the Second Restatement to resolve conflict of law questions in contract cases. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Where the parties have agreed to a choice of law, such an agreement is generally upheld unless the chosen

state has no substantial relationship to the transaction or applies a law that would contradict the fundamental public policy of a state with a greater interest in the transaction. *Id.* at 704. In the absence of an expressed choice of law, courts should determine which state has the most significant relationship to the contract, by considering "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971); *see also Ramakrishna v. Besser Co.*, 172 F. Supp. 2d 926, 932 (E.D. Mich. 2001).

Both parties agree that Maine law covers the TLA pursuant to a valid forum selection clause. ECF No. 31, PageID.583; ECF No. 33, PageID.781. The Court has not identified any public policy considerations or other reasons not to honor this clause.

The AM and RAM are silent as to the choice of law, but they do reference the TLA. ECF No. 23, PageID.470-74. The RAM specifically states that the parties "desire to supplement the TLA by entering into this Memorandum." ECF No. 23, PageID.473. Plaintiff indicated at oral argument that the AM and RAM might be governed by either Maine or Japanese law. Tr. 10/15/20, ECF No. 36, PageID.826. The AM was negotiated and signed in Japan and Mitsuiya is a Japanese company. But issues regarding royalties covered in the AM and RAM all concern a U.S.-

10

based party, FFT Technologies, with a Maine address and at least some operations there. *See* Maine Department of the Secretary of State Corporate Name Search, https://perma.cc/8B43-KLMG; Tr. 10/15/20 at 19:18-24, ECF No. 36, PageID.814. Additionally, the core purpose or "subject matter" of the AM and RAM is to supplement the TLA, which is explicitly governed by Maine law. It would create unnecessary complication and potentially a lack of uniformity if the Court were to apply one body of law to the contract and another to the addendum to that same contract. *See* Restatement (Second) of Conflict of Laws § 6 (1971) ("factors relevant to the choice of the applicable rule of law include . . . certainty, predictability and uniformity of result, and . . . ease in the determination and application of the law to be applied."). The Court finds that Maine law also governs the AM and RAM.

### ii.   Breach of contract analysis

Under Maine law, at the motion to dismiss stage a court must first determine if the provision at issue is ambiguous or not. *Halco v. Davey*, 919 A.2d 626, 629 (Me. 2007). If the provision is not ambiguous, the question of its meaning is a matter of law and may be decided by the court. The court must then decide if the plaintiff alleges sufficient facts to make out a breach of the provision such that the claim survives. *Id.* The elements of breach of contract in Maine are "(1) breach of a material contract term; (2) causation; and (3) damages." *Maine Woods Pellet Co., LLC v. W. World Ins. Co.*, 401 F. Supp. 3d 194, 199–200 (D. Me. 2019)

11

(citing *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 724 A.2d 1248 (Me. 1999)).

If the provision is ambiguous, however, both its meaning and the question of whether there was a breach become questions for the fact finder, and the claim must survive dismissal. *Halco v. Davey*, 919 A.2d at 629. For a term to be ambiguous, it must be "reasonably susceptible of different interpretations." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994).

### a. Alleged breach (1)—failure to negotiate a new royalty rate in good faith and failure to reach agreement on a new royalty rate

Defendants first seek to dismiss the breach of contract claim involving royalty rate negotiations. The specific language regarding setting a new royalty rate states that "Future Royalties after January 2016 will be discussed between the Parties." ECF No. 23, PageID.471.[3] Defendants concede that the TLA, AM, and RAM establish a duty to "discuss" the royalty rate that would apply after January 2016. ECF No. 25, Page ID.505. The Court therefore considers this claim to be alleging that Defendants breached their duty to "discuss" future royalties.

---

[3] The AM and RAM are largely duplicative in their terms and scope. Because it is the later-executed of the two agreements, the RAM and its terms will be referred to by the Court, unless it is necessary to discuss differences between the two documents due to the nature of a specific legal claim.

In order to address the merits of the motion to dismiss this breach of contract claim, the Court must first consider whether the meaning of the duty to "discuss," as it is used in the RAM, is ambiguous. The parties advance different understandings of what it means to "discuss." Defendants emphasize the importance of literal discussion, indicating that "going back and forth by the parties, sharing offers, counteroffers, even having meetings" would suffice. Tr. 10/15/20 at 14:10-14, ECF No. 36, PageID.809. In the FAC, Plaintiff suggests that the term "discuss" includes a requirement of reaching some resolution, or at least of conducting negotiations in good faith in order to reach agreement on the new royalty rate.

The RAM is a short document; it contains no definition for the term "to discuss." However, the four corners of the RAM provide some context: it opens with background information about "unbalanced royalties (sic) payment" and outlines a plan for repayment of past due royalties, forgiveness of some future due royalties, and a desire to "supplement" the TLA. It appears primarily to be a short-term roadmap. There is no explicit requirement that a new royalty rate must be agreed upon by a certain date, but neither is there any language suggesting that either party had the right to avoid good faith negotiations and to wait the agreement out until it was terminated by default. ECF No. 23, PageID.471-72. With that backdrop, it is understandable that both sides see their positions as reasonable.

Again, the operative language provides: "Future Royalties after January 2016 will be discussed between the Parties." The term "will be discussed" could reasonably be interpreted broadly, as in (1) "Future Royalties will be the subject of communication between the parties," or they could be interpreted in a manner more tailored to the context of the parties' relationship, as in (2) "Future Royalties will be the subject of good faith negotiations between the parties with a view toward reaching an agreement on them." The materials cited by parties or in the RAM itself provide scant support for making one definition or the other obviously correct, raising a serious question as to whether it would be reasonably possible to give the term different meanings.[4]

Consequently, at this stage the Court concludes that the term "will be discussed" is ambiguous. Should the parties present evidence at the summary judgment stage bearing on this question, it may be reconsidered. *See, e.g.*, *Tondreau*, 638 A.2d at 730. But based on the pleadings, the Court finds this term "reasonably susceptible" to different

---

[4] There does not seem to be a consensus among courts as to what satisfies a duty to "discuss" and whether it is materially different than a duty to "negotiate," further indication that the term is open to different interpretations. *See, e.g., Novelis v. Anheuser-Busch*, 559 F.Supp.2d 877 (N.D. Ohio 2008) (finding that duty to "discuss" is a lower burden than to "negotiate" without adopting a specific definition); *Cardonet, Inc. v. IBM Corp.*, No. C-06-06637RMW, 2008 WL 941707, at *1 (N.D. Cal. Apr. 7, 2008) (finding breach of contract allegation sufficient to survive summary judgment because the meaning of a contractual provision to "meet to discuss" is a question of fact for trial).

meanings. As Defendants concede that this claim survives if the term is found to be ambiguous, ECF No. 33, PageID.780, the motion to dismiss this breach of contract claim will be denied.

### b. Alleged breach (2)—failure to provide Mitsuiya access to corporate books for an audit

Defendants also seek to dismiss the breach of contract claim that they failed to provide Mitsuiya with access to their corporate books for an audit in 2019, pursuant to Article 9 of the TLA. ECF No. 23, PageID.462. Defendants argue that because the TLA was terminated on April 30, 2017, Mitsuiya no longer had a right to audit their books in 2019. ECF No. 25, PageID.508. Mitsuiya counters that its right to audit the books "vested" and therefore survived the termination of the agreement. ECF No. 31, PageID.590.

The Supreme Court has held that "structural provisions relating to remedies and dispute resolution . . . may in some cases survive in order to enforce duties arising under the contract." *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 208 (1991). "A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 205-06.

15

*Litton*'s holdings are most commonly applied to arbitration provisions in contracts, which are often found to survive termination if a dispute arises under the original contract. *See, e.g.*, *S. Bay Bos. Mgmt. v. Unite Here, Local 26*, 587 F.3d 35, 42-43 (1st Cir. 2009). Plaintiff has not identified an analogous case where an *audit provision* was interpreted to be an example of a "structural provision[] relating to remedies and dispute resolution," such that it could survive termination of a contract. However, it is significant that the language in the TLA specifies Mitsuiya can audit Defendants' books "to the extent necessary to verify the accuracy of the royalty payments and statement required hereunder." ECF No. 23, PageID.462. This ability to audit Defendants' books is not specified to occur at a regular frequency, meaning it was not a routine business practice or characteristic of the business relationship between Plaintiff and Defendants. Rather, construing the TLA in the light most favorable to Mitsuiya, the audit provision existed to ensure Mitsuiya would have the ability to gather relevant evidence in the event of a dispute about royalty payments.

And that is exactly what happened in 2019—Mitsuiya wanted to audit Defendants' books in order to understand if Defendants were in breach of royalty payment obligations from the time period when the agreement was still in force. Mitsuiya alleges Defendants were behind on royalties as early as 2013, a grievance that "involves facts and occurrences that arose before expiration." The dispute therefore arose

under the contract, and under *Litton* the audit provision could still be invoked to attempt to resolve it even after termination.

Although damages will have to be articulated with more specificity if the Plaintiff is to eventually recover on this claim, at the motion to dismiss stage the Court finds Plaintiff has provided sufficient facts to allege a breach of contract based on Defendants' refusal to allow Mitsuiya to audit their books in 2019.

Because both challenged breach of contract allegations survive against both Defendants, the motion to dismiss in part Count II (against FFT Technologies) and Count III (against FFT Holdings) is denied.

### C.   Count IV—Alter-ego liability of FFT Auburn, FFT Sidney, and Conform as to FFT Technologies[5]

Defendants do not dispute that FFT Technologies is a successor to FFT Inc. and responsible for any of FFT Inc.'s outstanding obligations or liabilities under the TLA. Tr. 10/15/20, ECF No. 36, PageID.803-04. But Plaintiff also alleges that three other named defendants—FFT Auburn, FFT Sidney, and Conform—are similarly liable because they are alter egos of FFT Technologies, or corporate entities created to "conceal assets" and to give the impression that FFT Technologies had more financial

---

[5] Plaintiffs also make allegations in this Count against FFT Holdings as the entity that "purportedly assumed" FFT Technologies. ECF No. 23, PageID.403. As discussed *supra* Section III.B, without making any specific conclusions about their relationship, for ease of understanding the Court will only refer to FFT Technologies rather than mentioning both entities' names.

capacity than it actually did, thereby inducing Mitsuiya to enter into the AM and RAM with the idea that Defendants' debts could and would be repaid. ¶¶ 321, 327-29, ECF No. 23, PageID.407-10. Defendants argue that Plaintiff has not provided sufficient specific facts to allege alter ego liability, and these three named defendants are not parties to any agreement or contract in question and cannot be held liable. ECF No. 25, PageID.508-10.

### i.   Choice of law

As a preliminary matter, the parties do not clearly identify what law should properly be applied to this claim. Plaintiff suggests Maine or Michigan law, ECF No. 31, PageID.592-93; Defendants cite Delaware and Michigan law, ECF No. 25, PageID.511-12. Given the elements of fraud present in this allegation, it is properly construed as an action in tort for choice-of-law purposes. *Lim v. Miller Parking Co.*, 548 B.R. 187, 203 (E.D. Mich. 2016). "Under Michigan's choice-of-law rules concerning tort claims, there is a presumption that Michigan law applies unless there is a rational reason to displace it." *Id.* at 204. The Court has not identified any strong reasons to displace Michigan law, and parties do not either. ECF No. 31, PageID.592-93. Therefore, the Court will proceed under the presumption and apply Michigan law.

### ii.   Alter ego liability analysis

To find alter ego liability, a court must determine that "1) the corporate entity is a mere instrumentality of another entity or individual;

18

(2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 796 (E.D. Mich. 2014). The factors that courts consider in determining whether one entity was a "mere instrumentality" of another include "undercapitalization of the corporation, the maintenance of separate books, the separation of the corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir.1988).

Defendants argue that Mitsuiya's allegations merely assert "common ownership," ECF No. 25, PageID.513, and lack "factually specific allegations." Tr. 10/15/20, ECF No. 36, PageID.812-13. The Court disagrees, identifying the following factual allegations in the record regarding each named defendant:

a. **FFT Auburn**—owned 100% by FFT Technologies (ECF No. 35, PageID.794); controlled by the same four executives as the other named Defendants from May 17, 2013 to November 1, 2016 (¶ 307, ECF No. 23, PageID.404).

b. **FFT Sidney**—shared a P.O. Box mailing address with FFT Technologies as of April 2018 (ECF No. 31, PageID.597-98); owned 100% by FFT Holdings, which also owns 100% of FFT Technologies (ECF No. 35, PageID.794); controlled by the same

four executives as the other named Defendants from May 17, 2013 to November 1, 2016 (¶ 307, ECF No. 23, PageID.404); jointly provided collateral to finance equipment leasing with FFT Technologies (¶ 318, ECF No. 23, PageID.406).

c. **Conform**—controlled by the same four executives as the other named Defendants from May 17, 2013 to November 1, 2016 (¶ 307, ECF No. 23, PageID.404); registered as the assumed name for FFT Technologies, FFT Auburn, and FFT Sidney (*Id.* at ¶ 322, PageID.407).

At this stage, these factual allegations are sufficient to assert claims of alter-ego liability against FFT Auburn, FFT Sydney, and Conform. *See Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp. 3d 578, 593 (E.D. Mich. 2016) (finding common ownership and mailing addresses sufficient to allege alter ego liability at motion to dismiss stage); *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 112 (6th Cir. 1989) (affirming district court finding of alter ego liability after trial where officers of the corporations were the same and one corporation had acquired the others' assets); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006) (allegations of a controlling parent-subsidiary relationship enough to move past motion to dismiss stage). Plaintiff alleges the remaining elements of alter ego liability through its contention that Defendants hid the nature of their relationships and used Mitsuiya's technology in

20

violation of the TLA and without proper compensation, resulting in financial loss. ¶ 332-45, ECF No. 23, PageID.410-14. Therefore, the motion to dismiss Count IV of the FAC is denied.

### D.   Count V—Unjust enrichment

Defendants next seek to dismiss Plaintiff's unjust enrichment claims in Count V by arguing they are preempted by the Michigan Uniform Trade Secret Act ("MUTSA") and its Maine analogue ("MeUTSA"). The MUTSA is meant to provide one uniform cause of action for trade secret misappropriation and displaces other state tort or civil remedies. MCL § 445.1908. The key question in evaluating preemption is whether the injury in question is solely due to misappropriation of a trade secret—if so, the only remedy is under the MUTSA, and common law unjust enrichment claims may not be pursued. *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 623 (E.D. Mich. 2005). If additional conduct is alleged that involves activity other than stealing trade secrets, and that conduct leads to its own injuries, claims in equity (such as unjust enrichment) as related to those injuries can still move forward. The analysis under the MeUTSA is largely the same. *See, e.g., Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, 2016 WL 424960, at *27 (D. Me. Feb. 3, 2016). To pursue an unjust enrichment claim, a plaintiff must show the following elements: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other

party." *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 906 (Mich. App. 2012).

Defendants argue that Plaintiff's FAC uses the term "trade secret" very liberally, and so there can be no unjust enrichment claim because all of Plaintiff's claimed injuries are solely due to misappropriation of trade secrets. ECF No. 25, PageID.516. Plaintiff counters that some of the information that it provided to Defendants was "sales knowhow and marketing information and strategy" that does not constitute trade secrets, and therefore it should be permitted to recover for the unpaid use of those resources under an unjust enrichment theory. ECF No. 31, PageID.602.

At this stage, Plaintiff's position is sufficient to prevail against the motion to dismiss. Taking its allegations as true, it provided some "knowhow" and "strategy" to Defendants that was of value—it helped Defendants successfully win contracts with Toyota. ECF No. 31, PageID.602. At least some of these categories of information are not alleged by Plaintiff to have been protected as trade secrets. *Id.* Lastly, that provision of information went uncompensated. *Id.* This kind of injury is not preempted by the MUTSA or the MeUTSA.

These allegations are sufficient because "know-how" is not by definition a trade secret: the Sixth Circuit has indicated that courts at the summary judgment stage should look into the nature of "know-how" to determine whether it is a trade secret such that related claims might

be preempted, or not. *See, e.g., Oldnar Corp. v. Panasonic Corp. of N. Am.*, 766 F. App'x 255, 268 (6th Cir. 2019) ("On remand, the district court is to determine whether Nartron's alleged 'know-how' satisfies MUTSA's definition of 'trade secret.'"). Additionally, determining whether a claimed injury is due to misappropriation of a trade secret requires an extensive and fact-specific inquiry. Courts in both states have articulated a series of factors to help determine whether something is, in fact, a trade secret. *See Wysong*, 412 F. Supp. 2d at 626; *Blue Sky W., LLC v. Maine Revenue Servs.*, 215 A.3d 812, 824 (Me. 2019). At this stage, there is scant information in the record that would permit the Court to assess these factors, and Defendants are unable to show there is "no set of facts" that would support Plaintiff's position.

After discovery has been completed, Defendants may wish to reassert their argument that Plaintiff's sales and marketing know-how qualified as trade secrets. But for now, the proper inquiry is whether Plaintiff has successfully alleged an injury that (1) meets the elements of unjust enrichment and (2) does not involve information that is unquestionably a trade secret such that it would be preempted by the MUTSA and MeUTSA. Consequently, Defendants' motion to dismiss Count V is denied.

### E.  Motion to Strike

Lastly, the Court will briefly address Defendants' motion to strike. Courts can strike "redundant, immaterial, impertinent, or scandalous matter" from pleadings. Fed. R. Civ. P. 12(f). However:

> Motions to strike are viewed with disfavor and are not frequently granted. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953); *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977). The function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case. *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir.1986) (quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983)).

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

Defendants take issue generally with the length of the complaint and cite several specific phrases and sentences they find "immaterial, impertinent, or scandalous." ECF No. 25, PageID.518-21. But they neither specify with particularity exactly what the Court should strike, nor do they ask to strike any claims in full. Nothing Defendants ask this Court to do would increase efficiency or dispense with "spurious issues," and nothing in the FAC violates Fed. R. Civ. P. 12(f) in a way that warrants this extreme remedy. The motion to strike is therefore denied.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss (ECF No. 25) is **GRANTED** in part and **DENIED** in part. The motion to dismiss FFT Inc. as a Defendant and to dismiss Count I of the FAC is **GRANTED**, while the motion to dismiss parts of Counts II and III as well as Counts IV and V of the FAC is **DENIED**. Counts II-V of the FAC therefore survive in full, except for any allegations against FFT Inc. The motion to strike is also **DENIED.**

Because it does not appear that any amendment would cure the deficiencies regarding the claims against FFT Inc. set out in Count I, that Count of the FAC is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 11th day of February, 2020.

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge